# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PHILLIP EDWARD KITTERMAN ) | |
| ) | CASE NO. 04-37035 |
| Debtor ) | |
| ) | |
| PHILLIP EDWARD KITTERMAN ) | |
| ) | AP NO. 05-03072 |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| SALLIE MAE SERVICING, L.P., et al. ) | |
| ) | |
| Defendant(s) ) | |

## MEMORANDUM-OPINION

This matter came before the Court for trial on May 22, 2006 on the Complaint to Determine Dischargeability of Student Loans Based on Undue Hardship of Plaintiff/Debtor Phillip Edward Kitterman ("Debtor") against Defendants Sallie Mae Servicing, L.P. ("Sallie Mae"), Educational Credit Management Corp. ("ECMC") and the United States Department of Education. The Court considered the testimony and evidence submitted at trial and the written submissions of the parties. For the following reasons, the Court finds the educational loans of the Debtor are nondischargeable pursuant to 11 U.S.C. §523(a)(8). The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Bankruptcy Rules of Procedure.

**FINDINGS OF FACT**

Debtor filed his Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code on November 2, 2004. Debtor is 37 years old, single and has no dependents.

Debtor graduated from Indiana University Southeast with a degree in history. From 1995 to 1999, Debtor attended and graduated from the New York College of Medicine with a degree of Doctor of Podiatry Medicine. Debtor also attended New York Medical College School of Public Health from 1996 through 1999. He completed all course requirements except for his thesis in order to receive a Master's Degree in Public Health and Health Services Management Policy.

Although Debtor received his degree in podiatry, he did not complete his residency training. Debtor could not complete the clinical portion of his podiatry studies because he experienced fainting spells while working with patients. He cannot practice podiatry without completing his clinical practice. He would have made $40,000 per year as a resident and $70,000-$80,000 a year as a podiatrist.

After leaving New York, Debtor worked for Humana as a manager in financial consulting. He made approximately $65,000 per year plus a bonus. His job was downsized and he was unemployed for nine months. Debtor has not sought a job in the health field since shortly after losing the position with Humana.

Debtor then worked at American Express as a financial adviser for $19,000 per year. American Express closed their loan office in Louisville and Debtor was again unemployed.

Debtor next worked for National City Bank. He made between $32,000 and $44,000 per year including a bonus. He held this job for one to two years before this job was eliminated by National City Bank.

His next job was with T. D. Waterhouse as an investment adviser. He made approximately $40,000 per year. He only held this job for four months.

His current employment is as an investment consultant with BB&T. He makes approximately $23,000 per year. His net take home pay is $704 twice a month.

His current monthly expenses include $500 for rent on a condominium owned by his parents, $75 for utilities, $120 condo maintenance fee, $200-$300 for food, $200 for car insurance, $100 for a cell phone (this expense will soon be covered by his employer), $40 for dry cleaning and $100 for medication. He claims he has no excess funds to pay anything on his student loans. He drives a 1999 Infinity automobile.

Debtor testified that he currently suffers from depression and a form of colitis. The fainting spells that prevented him from completing his residency started in high school. He was treated for depression while he attended college. The fainting spells are infrequent now and the last one occurred while he was at work approximately one year ago. He has never been terminated from a job due to his health conditions.

In 1999 Debtor applied for loan consolidation under the William D. Ford Income Contingency Repayment Program ("ICR"), but claims he was not eligible. Debtor owes $19,000 in Health Education Assistance Loans. He repaid $4,123.14 on these loans. With interest the amount currently owed is $28,358.69. This loan was assigned to the U.S. Department of Health and Human Services. This loan is not subject to discharge in this adversary proceeding.

Debtor borrowed $10,500 from the U.S. Department of Education. He made one payment of $750 on that loan. As of May 2006, the amount owed with interest on this loan was $15,344.71.

Debtor also borrowed $84,222.11 from Sallie Mae at a fixed rate of interest of 7.63%. ECMC is the current holder of that note. As of May 7, 2006, the unpaid principal, interest and collection costs are $120,373.66. Interest continues to accrue at the rate of $24.00 per day.

The Debtor's monthly expenses showed an unusually high amount for dinners and lunches at various Louisville restaurants. Debtor contends that some of these expenses were work-related and reimbursed by his employer. His monthly expenses also included charges for membership in a health club and to a tanning salon.

Under the William D. Ford ICR Program, using his current salary of approximately $27,000 with a loan balance of $185,000 at 8.27% interest, his average monthly payment would be approximately $290.50. He has not reapplied for participation in this Program since he was found ineligible in 1999.

Debtor requested that the Court keep the case open after trial in order to take a deposition of his treating physician. Defendants objected to this request.

### **CONCLUSIONS OF LAW**

Debtor's request to leave the record open to take the deposition of the Debtor's treating physician is denied. The parties agreed to extend the discovery deadline to May 3, 2006. No further requests for extending the deadline were made. The matter was ready for trial and it would be unduly prejudicial to allow the deposition after all the proof in the case has been taken and submitted to the Court. Furthermore, since there was no evidence that the Debtor's medical condition prevented him from finding and maintaining employment, the Court finds that the deposition would not have aided the Court in its decision.

Pursuant to 11 U.S.C. §523(a)(8), a discharge under 11 U.S.C. §727 does not discharge a debtor from an educational benefit or loan made, insured or guaranteed by a governmental unit unless excepting such debt from discharge would impose an undue hardship on the debtor and his dependents. The trial evidence established that Debtor has no dependents and that excepting the debts at issue would not pose an undue hardship on the Debtor.

Debtor had the burden of proving undue hardship with respect to the repayment of the loans. In re Berthiaume, 138 B.R. 516, 520 (Bankr. W.D. Ky. 1992). The Sixth Circuit requires a debtor seeking a hardship discharge to demonstrate: (a) that the debtor cannot maintain, based on current income and expenses a "minimal" standard of living for himself and his dependents if forced to repay the loan; (b) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (c) that the debtor has made good faith efforts to repay. Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987); In re Oyler, 397 F.3d 382, 385 (6th Cir. 2005).

The debtor herein is a highly educated individual. While the amount of loans is high, they are commensurate with the degrees obtained by Debtor. His failure to complete his residency leaves him unable to practice podiatry and he lacks only the completion of his thesis to obtain a Master's Degree in Public Health Services Management Policy. Completion of both would greatly enhance Debtor's income. Debtor chose, however, to pursue employment in the financial sector, rather than the more lucrative health field. His health conditions alleged to prevent the completion of his residency were not proven by a preponderance of the evidence. Debtor has not proven that he cannot maintain a "minimal" standard of living. The proof did establish that by participation in the

William D. Ford ICR Program, with perhaps a bit of belt-tightening, Debtor can repay the loans that he used to better his educational standing.

The second prong of Brunner requires a showing of additional circumstances indicating that this state of affairs is likely to persist for a significant portion of the repayment period. Debtor had to show circumstances "indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" Oyler, 397 F.3d at 386; quoting In re Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993). More importantly, the circumstances must be beyond the debtor's control, not borne of free choice. Id., and In re Fischer, 23 B.R. 432, 434 (Bankr. W.D. Ky. 1982). Not only has Debtor failed to prove that some condition or circumstance currently prevents him from repaying the loans, but also that such a condition or circumstance will persist for the foreseeable future. His medical condition related to fainting spells and depression have never interfered with his ability to succeed in school or maintain employment. Additionally, his choice to pursue employment in the financial sector rather than healthcare, is a personal voluntary choice that cannot merit undue hardship relief. Oyler, 397 F.3d at 386. Debtor cannot fulfill the second requirement of the Brunner test.

The final element of the Brunner test is a showing that the debtor made good faith efforts to repay the loans. The Court finds Debtor failed to carry his burden of proof on this issue also. The record of Debtor's repayment of the loans at issue is bare. Defendants offered evidence that established that at Debtor's current salary, his participation in the William D. Ford ICR Program would yield a monthly payment of $290. Yet, Defendant has failed to apply for this program. A decision not to take advantage of the program is probative of the Debtor's intent to repay the student loans. In re Tirch, 409 F.3d 677, 682 (6th Cir. 2005). Debtor did apply for the program in 1999, but

has failed to reapply for the program since filing bankruptcy. This along with his sparse repayment efforts on the loans owed leaves the Court to conclude that Debtor cannot meet the third requirement of the Brunner test. Accordingly, Debtor is not entitled to discharge his student loans under 11 U.S.C. §523(a)(8).

## **CONCLUSION**

For all of the above reasons, judgment will be entered in favor of Defendants Sallie Mae Servicing, L.P., Educational Credit Management Corp., and the United States Department of Education on Complaint to Determine Dischargeability of Student Loans Based on Undue Hardship of Plaintiff/Debtor Phillip Edward Kitterman. A Judgment accompanies this Memorandum-Opinion.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHILLIP EDWARD KITTERMAN | ) | |
| | ) | CASE NO.  04-37035 |
| Debtor | ) | |
| | ) | |
| PHILLIP EDWARD KITTERMAN | ) | |
| | ) | AP NO.  05-03072 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLIE MAE SERVICING, L.P., et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of Defendants Sallie Mae Servicing, L.P., Educational Credit Management Corporation, and United States Department of Education on the Complaint to Determine Dischargeability of Student Loans Based on Undue Hardship of Plaintiff/Debtor Phillip Edward Kitterman.

This is a final and appealable Judgment and there is no just reason for delay.